**Opinion issued July 2, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-25-00265-CR

## NO. 01-25-00266-CR

————————————————

**DELFONTE DAMON DIAMOND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 488th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1861609 and 1861610**

---

## MEMORANDUM OPINION

A jury convicted Appellant Delfonte Damon Diamond of the first-degree

felony offense of aggravated sexual assault of a child under fourteen years of age

and the second-degree felony offense of sexual assault of a child and assessed his punishment at twenty-five years in prison and twenty years in prison, respectively.[1]

In a single issue, Diamond argues that the trial court abused its discretion in failing to conduct a hearing on his motion for new trial.

We affirm the trial court's judgments.

## Background[2]

Delfonte Damon Diamond was charged by two separate indictments with the felony offenses of aggravated sexual assault of Sonya, a child younger than fourteen years of age, and of sexual assault of Sonya. The two cases were consolidated for trial.

During the guilt-innocence phase of trial, ten witnesses, including Sonya, testified for the State. No witnesses testified for the defense. The State presented two witnesses during the punishment phase of trial, and the defense presented two witnesses. Diamond did not testify.

After the jury assessed Diamond's punishment in the first charge at twenty-five years and the second charge at twenty years in prison, the trial court ordered the sentences to run concurrently.

---

[1]    Diamond was also assessed a fine of $100 in each case.

[2]    In this opinion, we use a pseudonym for the complainant to protect her privacy. *See* TEX. CODE CRIM. PROC. art. 58.152 (permitting use of pseudonyms for sexual-assault victims).

## The Motion for New Trial[3]

Diamond filed a motion for new trial arguing he was denied effective assistance of counsel because his attorney failed to investigate and present mitigating evidence in the form of character witnesses during the punishment phase of trial, he was not given the right to testify on his own behalf, and his right to testify was abrogated by his counsel's failure to allow him to testify. Diamond also argued that his right to present a defense was abrogated by threats made by third parties that kept witnesses from testifying. In the affidavit attached to his motion for new trial, Diamond testified to the following:

- "I wanted to tell my story. My lawyer said that she would call me as a witness only as a last resort. We never prepared my testimony."

- "If I would have testified, I would have told my story. I would have denied the allegation and told the jury the truth."

- "My wife's testimony would have benefitted my defense but she was afraid."

- "After the allegation of sexual abuse, [Sonya's] father threaten[ed] to kill me, my wife and children, my wife's parents and my mother. . . . My wife and her parents did not testify because of the threats. They refused to come to court because of the threats."

- "My lawyer never asked me to provide her with a list of character witnesses who would come to court to testify on my behalf."

---

[3]     One motion for new trial was filed for both cause numbers.

- "After the second day of trial, my lawyer called me [and] asked me to come to her office to discuss testifying. I told her that I was ready. I wanted to tell my story. The next day the trial ended without any witnesses being called."

- During punishment my mother testified on [my] behalf. None of the athletes I trained or people I helped or people that knew testified. The jury never heard my story."

Also attached to the motion for new trial were affidavits by Diamond's mother, who testified during the punishment phase, and by April King-Davis, whose young son had athletic training with Diamond. Diamond's mother, Yolanda Diamond, testified in her affidavit that Diamond's wife and her parents "did not come to court because of the death threats that they received" from Sonya's father. She also testified that it was her understanding that "the plan was for [Diamond] to testify on his behalf." King-Davis testified in her affidavit that the professional athletes who worked with Diamond "would have gladly testified at trial concerning his character and reputation" prior to his conviction, but after the conviction, the athletes were told "not to get involved" by their agents because of the "effect that their association with [Diamond] might have on their career and endorsements.'" More than thirty notes and letters attesting to Diamond's character were attached to the motion for new trial.[4]

The motion for new trial included a request for a hearing. The trial court signed an "Acknowledgement of Presentment of Defendant's Motion for New

---

[4] The State avers in its appellate brief that it filed a response to the motion for new trial but the response is not in the appellate record.

4

Trial and Order Setting Date," setting a hearing "by affidavits" to occur on June 11, 2025. No oral hearing was conducted.[5] The motion for new trial was overruled by operation of law on June 24, 2025.[6]

This appeal ensued. In a single issue, Diamond argues that the trial court abused its discretion in failing to conduct an oral hearing on his motion for new trial.

**Motion for New Trial Hearing**

A motion for new trial has two purposes: to (1) "decid[e] whether the cause shall be retried" and (2) "prepare a record for presenting issues on appeal in the event the motion is denied." *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) (quoting *State v. Gonzalez*, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993)). We review a trial court's failure to hold a hearing on a motion for new trial for abuse of discretion. *Id.*

A hearing on a motion for new trial is not required when the matters raised in the motion "are subject to being determined from the record." *Id.* When matters are not determinable from the record, a defendant is entitled to a hearing on his

---

[5]     A trial court may rule on a motion for new trial "based on sworn pleadings and affidavits without oral testimony; live testimony is not required." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (citing *Rivera v. State*, 89 S.W.3d 55, 58–59 n. 9 (Tex. Crim. App. 2002)).

[6]     *See* TEX. R. CIV. P. 329b(c).

motion for new trial only if he also establishes the existence of "reasonable grounds" showing he "could be entitled to relief." *Id.* at 339.

Thus, in our review, we consider whether "the defendant []raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340. A trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing the defendant could potentially be entitled to relief. *Robinson v. State*, 514 S.W.3d 816, 825 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009)).

In reviewing a trial court's denial of a hearing on a motion for new trial, we reverse "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Smith*, 286 S.W.3d at 339 (quoting *Gonzalez*, 855 S.W.2d at 695 n.4, 696).

**Ineffective Assistance of Counsel**

In his motion for new trial, Diamond alleged his trial counsel was ineffective because (1) he "fail[ed] to investigate and present mitigat[ing] evidence at punishment by failing to present any character witnesses" and (2) he was denied

6

the right to testify.[7] We conclude the trial court did not abuse its discretion in not holding a hearing on Diamond's motion for new trial involving his claims of ineffective assistance of counsel.

We evaluate claims that counsel was ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under *Strickland*, the appellant must show that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Thus, before a defendant is entitled to a hearing on a motion for new trial based on a claim of ineffective assistance of counsel, a defendant "must allege sufficient facts from which a trial court could reasonably conclude *both* that

---

[7]    Although Diamond argued in his motion for new trial and on appeal that there were two distinct issues with respect to his failure to testify, we view them as a single argument. We cannot find a discernible difference between his argument that he "was denied effective assistance by denying [him] his right to testify in his own behalf" and his argument that his "right to testify was abrogated by trial counsel['s] failure to allow him to testify." Moreover, Diamond addresses these arguments together in his motion for new trial and in his appellate brief.

counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith*, 286 S.W.3d at 341 (emphasis in original) (citing cases).

There is a "strong presumption" that counsel's performance was "reasonable" in the context of an ineffective assistance claim. *Albert v. State*, 695 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (citing *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017)). To establish ineffective assistance, "[i]t is not enough that counsel's performance may seem questionable in hindsight." *Id.* (citing *Prine*, 537 S.W.3d at 117). Nor can we find "that counsel's performance was deficient based on conjecture." *Id.* (citing *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)).

## A.    Character Witnesses

Diamond first complains that his defense counsel rendered ineffective assistance during the punishment phase of trial by failing to call additional character witnesses to testify.[8] His motion for new trial states that "[t]here were numerous people in the community who would have attested to the contribution that [Diamond] made to their lives."

---

[8]    As noted, although the defense did not call witnesses during the guilt-innocence phase, the defense presented two witnesses, including Diamond's mother, during the punishment phase. In his motion for new trial, he complained only of his counsel's failure to call character witnesses during the punishment phase, so we must disregard his argument on appeal that additional witnesses or mitigating evidence should have been presented during the guilt-innocence phase also.

We addressed a similar scenario in *Robinson v. State*, where the appellant argued his counsel rendered ineffective assistance because he did not present mitigating evidence during the punishment phase of trial "despite the availability of character witnesses to testify on his behalf." 514 S.W.3d at 822. We held that a defendant who complains about trial counsel's failure to call witnesses "must show the witnesses were available and that he would have benefitted from their testimony." *Id.* at 824 (citing *Cantu v. State*, 993 S.W.2d 712, 719 (Tex. App.–San Antonio 1999, pet. ref'd)). Although defense counsel in *Robinson* did not call witnesses to testify on his client's behalf during the punishment phase of trial, he attached eight letters from Robinson's family and friends to his motion for new trial. *Id.* We held that seven of the letters were insufficient because they "did not indicate whether the particular individual had been available or willing to testify at appellant's trial" and the record included "no sworn testimony concerning their availability to testify or the substance of their testimony had they been asked to testify." *Id.* With respect to the eighth letter, we held the letter was insufficient because "[l]ike the other individuals who wrote letters on appellant's behalf, appellate counsel did not obtain an affidavit from [that individual] describing the substance of his testimony had he been asked to testify." *Id.* We thus held that Robinson had not established that his trial counsel rendered ineffective assistance by failing to call witnesses during the trial's punishment phase. *Id.* at 825.

We reach the same conclusion here. Diamond's motion for new trial included more than thirty notes and letters attesting to his character. But none of the authors indicated whether they were "available or willing to testify" at Diamond's trial nor did they provide the specific substance of the testimony they would have given at trial.[9] *See id.* at 826 ("Although appellant supported his motion with letters from eight family members and friends, he did not attach any affidavits from any of these individuals setting out their availability to testify, their willingness to testify, the substance of their testimony, or defense counsel's efforts in investigating their testimony."). Thus, Diamond cannot rely on the thirty-plus supportive documents to establish his counsel rendered ineffective assistance by failing to proffer mitigating testimony. *See id.*; *see also Ex parte McFarland*, 163 S.W.3d 743, 758 (Tex. Crim. App. 2005) (rejecting ineffective assistance claim based on failure to call mitigating witnesses because habeas corpus applicant failed to show witnesses "were available to testify or that their testimony would have

---

[9] Diamond's motion for new trial attached three affidavits: one from Diamond, one from his mother—who testified during the punishment phase—and one from April King-Davis, whose affidavit "told the story of her involvement with Appellant and his reputation in the community." Her statement that athletes Diamond had worked with "would have come forward to testify if asked prior to any conviction" does not satisfy the requirement that the affidavit indicate the affiant was "available or willing to testify" at trial. Indeed, she did not and could not testify that the athletes were available to testify at trial or how they would have testified.

10

benefitted him" and thus, he failed to show prejudice);[10] *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.") (citation omitted).

The State argues that the "affidavits"[11] "provide only cumulative information, imitating what Appellant's character witnesses already testified to at the punishment phase of his trial." According to the State, Diamond's ineffective assistance argument based on his counsel's failure to call mitigating witnesses fails because Diamond did not "demonstrate how the additional testimony would have made any difference to the jury's assessment of [his] punishment[.]" We tend to agree. In his motion for new trial, Diamond argued that there were "numerous people in the community who would have attested to the contribution that [he] made to their lives." In his affidavit in support of his motion for new trial, Diamond stated he would have testified as to his version of the events that led to his conviction, but he does not identify to what any of the other "character witnesses" he refers to would have testified. And on appeal, Diamond argues only

---

[10]    The habeas applicant in *Ex parte McFarland*, 163 S.W.3d 743, 758 (Tex. Crim. App. 2005) did not identify the witnesses he contended his counsel should have called to offer mitigating testimony.

[11]    Presumably, the State also is referring to the unsworn notes and letters attached to the motion for new trial.

that the statements attached to his motion for new trial "present a different person tha[n] the one presented by trial counsel during the punishment phase of the trial as no evidence was presented at guilt."

Without elaboration from Diamond, we cannot say that any additional witnesses would have provided relevant or non-cumulative information about his character.[12, 13] Indeed, his affidavit was conclusory because it did not identify what any "character witnesses who would [have] come to court to testify on [his] behalf" would have said. "Affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, in such circumstances no hearing is required." *Stokes v. State*, 298 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Smith*, 286 S.W.3d at 339); *see also Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding trial court did not abuse discretion in failing to hold hearing on motion for

---

[12] "A failure by trial counsel to introduce additional mitigation evidence that would have been cumulative does not establish prejudice under *Strickland*." *Miller v. State*, No. 09-17-00270-CR, 2018 WL 4608231, at *7 (Tex. App.—Beaumont Sept. 26, 2018, no pet.) (mem. op., not designated for publication); *see Wong v. Belmontes*, 558 U.S. 15, 22 (2009) (holding that cumulative mitigation evidence is unnecessary).

[13] Yolanda Diamond testified about her son's family life, his health, his faith in God, and his "character and integrity." She testified that the family "looks up to him," that he is "highly respected in the community," and that he has no previous criminal history. The other character witness testified that she stayed with Diamond and his mother when she was "in a bad place" in her life in 2003. Diamond was in junior high at the time and she has "remained connected" to him since then. She said Diamond is "compassionate, caring, involved in the community, love[s] the Lord, teaching Sunday school."

new trial based on alleged ineffective assistance of counsel for failing to investigate and subpoena witnesses; affidavit in support of motion was "deficient" because it said witnesses "could have provided crucial exculpatory information" but "failed to state what the two witnesses would have said to exculpate him").

## B. Diamond's Right to Testify

Diamond next argues that his counsel rendered ineffective assistance because he was denied the right to testify on his own behalf and because his right to testify was abrogated by his trial counsel.

Before closing arguments in the guilt-innocence phase of trial, Diamond testified outside the presence of the jury that he did not want to testify on his own behalf:

| | |
|---|---|
| Defense counsel: | Mr. Diamond, it is, in fact, your decision to not testify on your behalf in this case; is that correct? |
| Diamond: | Yes. |
| Defense counsel: | And have you and I and our co-counsel had extensive conversations about the pros and cons of you testifying or not? |
| Diamond: | Yes. |
| Defense counsel: | And is it your decision that you do not want to testify? |
| Diamond: | Yes. |
| Defense counsel: | And is that decision your decision alone? |

Diamond: Yes.

Defense counsel: And it's been made freely and voluntarily by you?

Diamond: Yes.

Defense counsel: Okay. And that is how you wish to proceed in this case?

Diamond: Yes.

Diamond did not address this on-the-record discussion with his counsel in his motion for new trial. He instead attached an affidavit stating he "wanted to tell [his] story" and that he and his attorney "never prepared [his] testimony."[14] The affidavit is silent with respect to his testimony in court that he did not want to testify. He argues in his appellate brief that notwithstanding his acknowledgement that he "did not want to testify," he "believed that he would testify as no defense was presented at trial."

In *Escobar v. State*, involving similar circumstances, we held that the appellant had not established ineffective assistance of counsel because he had documented his desire not to testify at trial in writing. 227 S.W.3d 123, 125 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Like Diamond does here, the appellant in *Escobar* argued his trial counsel had rendered ineffective assistance of counsel

---

[14] "If appellant was aware of his right to testify during the guilt/innocence phase and chose not to do so, there is no reasonable probability that the result of the proceeding would have been different but for [c]ounsel's failure to prepare appellant to testify." *Chavez v. State*, 712 S.W.3d 166, 176 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd).

"by failing to properly inform him of his right to testify." *Id.* The record reflected that appellant had "documented in writing that he did not wish to testify at the trial" and that the appellant "understood that the ultimate decision to testify belonged to him." *Id.* at 127. Trial counsel inquired of his client before and during trial whether he wanted to testify. *Id.* We held that by "repeatedly asking appellant if he wished to testify, appellant's attorney adequately informed appellant of his right to testify." *Id.* We thus concluded the appellant had not "show[n] by a preponderance of the evidence that counsel performed below an objective standard of reasonableness." *Id.*

Given Diamond's unequivocal statement on the record that he did not want to testify, that the decision was his alone, that his decision had been made "freely and voluntarily," and that he understood the "pros and cons" of his decision, he did not show by a preponderance of the evidence that his counsel rendered ineffective assistance of counsel in not calling him to testify at trial. *See Chavez v. State*, 712 S.W.3d 166, 176–77 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (holding when appellant told his counsel he did not want to testify and chose not to testify but then complained on appeal of ineffective assistance of counsel for failure to inform him of his right to testify and to prepare him to testify, "[a] reasonable view of the record supports the trial court's rejection of appellant's ineffective-

15

assistance complaints in the motion for new trial . . . and the trial court did not abuse its discretion in rejecting these complaints").

We thus conclude that even if the matters asserted in Diamond's motion for new trial were not determinable from the record,[15] Diamond did not establish the existence of "reasonable grounds showing [he] could potentially be entitled to relief." *See Hobbs*, 298 S.W.3d at 199; *Washington v. State*, 394 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Smith*, 286 S.W.3d at 341. The trial court thus did not err in not conducting a hearing on his motion for new trial.

### Threats to Witnesses

Diamond also argues that he was entitled to a hearing on his motion for new trial because his right to present a defense "was abrogated by threats made by third parties that prevented witnesses from testifying." Diamond's motion for new trial states:

> The Defendant, his wife and her family as well as his mother's lives have been threaten[ed]. The Defendant's wife was afraid to appear in court with him and testify on his behalf. Testimony was presented that his wife witnessed the Defendant's interaction with the complainant in their home. His wife could have refuted that factual assertion.

---

[15]     *See Buerger v. State*, 60 S.W.3d 358, 362 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("Whether appellant received ineffective assistance of counsel . . . is not determinable from the record.") (citing *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) ("The motion [for new trial] alleged matters not determinable from the record, namely that counsel was ineffective.")).

In his appellate brief, Diamond argues that Sonya's father threatened defense witnesses, "which prevented them from testifying." Diamond does not appear to argue ineffective assistance based on the alleged threats. Rather, he argues in his brief without citation to authority or to the record that if "an outside influence prevented witnesses [from] testify[ing] Appellant would have been entitled to a new trial." This is not an argument with respect to Diamond's right to a hearing on the motion for new trial; rather, it is an argument that Diamond was entitled to a new trial.

Regardless, the State argues that because Diamond did not raise this issue during trial—although Diamond knew of the purported threats by the time of trial—he was precluded from raising it for the first time in his motion for new trial. Diamond stated in his affidavit in support of his motion for new trial:

> After the allegation of sexual abuse, [Sonya's] father threaten[ed] to kill me, my wife and children, my wife's parents and my mother. We moved into my mother's house to get away from the threats. My wife and her parents did not testify because of the threats. They refused to come to court because of the threats. While the charges were pending, I always was accompanied by others who were protecting me from [Sonya's] father.

And Diamond's mother, Yolanda Diamond, testified in her affidavit in support of the motion for new trial:

> Our lives (myself, [Diamond], [Diamond's] wife, [Diamond's] wife's parents, and the church [Diamond's] wife's parents attended) were threatened by the father of the complainant . . . before and after my son was charged with this crime. My daughter-in-law, Shattera

17

Diamond and her parents, Terrell Fields and Shawerra Fields, did not come to court because of the death threats that they received. When [Diamond] went to court, he always had security with him to protect his life. My son has been told that [Sonya's father] would arrange for his death in or out of prison.

I was on the phone with Shattera when I first heard the threats. While on the phone day with Shattera, I heard a voice that I recognized to be [Sonya's father] say he was going to kill her and her children. I heard him say that he hated my grandson because he looked like my son.

When my son and I received the threats, I made a police report. My son's wife also made a police report. . . . I also told my son's lawyer. I was told that there was nothing that she could do. I received phone calls that these people were dangerous and would kill my son.

These affidavits indicate that Diamond knew about the alleged threats by time of trial. "A defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial." *Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019). Because Diamon knew about the alleged threats but did not raise the issue during trial, he was precluded from raising the issue for the first time in his motion for new trial. *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007) (holding that if trial court denies motion for new trial, "the defendant, as the losing party, must have preserved that same error [during trial] before he may claim it as a basis for reversing the trial judge once he moves into the appellate court"); *Alexander v. State*, 137 S.W.3d 127, 131 (Tex. App.— Houston [1st Dist.] 2004, pet. ref'd) (holding defendant failed to preserve error for appellate review when he first asserted constitutional objections in motion for new

trial).[16] We thus conclude that Diamond did not preserve his argument for appellate review with respect to the threats he contends prevented witnesses from testifying in his favor.

We overrule Diamond's sole issue.

## Conclusion

We affirm the trial court's judgments.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).

---

16      *See Espinoza v. State*, No. 02-12-00206-CR, 2014 WL 4656638, at *2 n.2 (Tex. App.—Fort Worth Sept. 18, 2014, no pet.) (mem. op., not designated for publication) (affirming trial court's denial of motion for new trial based on allegations that prosecutor's threats of filing charges against witnesses prevented them from testifying; holding issue was unpreserved and noting trial court's statement that "if the lawyer believes that a witness is being precluded from testifying by [coercion], threats, [or] force or fraud, there are remedies available by making objections, making a proffer, [or] calling the witness outside the presence of the jury. And from the record, none of that was attempted."); *Hamilton v. State*, No. 01-21-00587-CR, 2023 WL 3099909, at *13 (Tex. App.—Houston [1st Dist.] Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication) (holding appellant waived objection to presence during complainant's testimony and victim impact statement of "group of imposing men and women" who "sent a clear message that they believed abuse had in fact occurred," because he did not object to their presence during trial and only objected for first time in motion for new trial).